# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| United States of America, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 14 CR 112<br>) |
| Jon Giles, | ) Judge Ronald A. Guzmán<br>)<br>) |
| Defendants. | )<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

The rulings contained herein on the defendant's pretrial motions in limine are necessarily conditional and subject to change depending on the content of the evidence as it comes in and the manner and arguments of the attorneys.

**Defendant's Motion in Limine #1: Motion to Bar Gang Evidence[1]**

Defendant argues that the Seventh Circuit has "long recognized the substantial risk of unfair prejudice attached to gang affiliation evidence, noting such evidence is likely to be damaging to a defendant in the eyes of the jury and that gangs suffer from poor public relations." (ECF No. 125, Def.'s Consol. Mots. Limine at 5 (quoting *United States v. Irvin*, 87 F.3d 860, 864 (7th Cir. 1996)).) The Court of Appeals therefore "require[s] careful consideration by district courts in determining the admissibility of gang membership and gang activity evidence." *Irvin*, 87 F.3d at 864; *see also United States v. Montgomery*, 390 F.3d 1013, 1018 (7th Cir. 2004) ("[I]n our review we examine the care and thoroughness with which a district judge considered the admission or exclusion of gang-involvement evidence."). Historically, courts have admitted gang evidence only when the gang has some nexus to the charged crime (typically drug or violent crimes). Federal Rule of Evidence 403 allows the court to exclude relevant evidence if it is

---

1. During his interview, the defendant admitted to being a member of the Four Corner Hustlers gang.

determined that its probative value is substantially outweighed by, among other things, danger of unfair prejudice.

The defendant intends to offer expert testimony as to his state of mind during the interview that resulted in his confession. In particular, the defense intends to argue that the defendant suffered deficits in his "ability to comprehend," as well as "impairment in memory, in attention, and concentration" and that the agents took advantage of defendant's resulting suggestibility in obtaining a false confession. Given this defense, the totality of the defendant's conduct during his interview with the FBI is relevant and important evidence. Any interview conduct that suggests the defendant had good memory and recall, was aware of his circumstances, made appropriate decisions and changed his posture and answers when confronted with contradictory evidence (from denial to advocating for a deal) is therefore crucial. These factors were important in the Court's consideration and denial of the defendant's motion to suppress the admission/confession and will be equally important to the jury in determining how much weight to give the defendant's confession. Evidence that the defendant was able to accurately describe his past, including his gang involvement and his own status or rank within the gang, will tend to directly contradict the argument that his memory was impaired. Evidence that the defendant attempted to use his knowledge of other crimes and his position within the gang in exchange for lenient treatment is likewise important to contradict the defense of suggestibility or inability to comprehend or concentrate. The defendant's ability to fully comprehend the questions put to him by the agents can best be measured by the responsiveness of his answers. Similarly, his ability to engage freely in a rational manner, to initiate topics as well as to respond, and to maintain a lucid train of thought are all important indicators of a rational state of mind, just as an inability to do such things could indicate an impaired state of mind. Given the defense posture in this case and the importance of the evidence of defendant's confession to the government's case, the probative value of gang involvement evidence substantially outweighs any prejudice to the defendant. Cropping or redacting portions of the defendant's conversation with the FBI agents to delete references to his gang membership would alter the overall impression of the defendant's state of mind and thus interfere with the jury's ability to gauge his state of mind. This would not be fair to the government. Thus, the probative

value of the defendant's statements regarding his gang membership and his position or rank within the gang is not substantially outweighed by its prejudicial effect.

In particular, defendant objects to the use of his statement that although he recalls having a loaded handgun during the commission of the bank robbery, he could not recall whether it was a 9-millimeter or .40-caliber handgun because his position within the gang gave him easy access to many different types and calibers of weapons. The defense questions the probative value of this evidence and maintains that this particular reference to gang membership is irrelevant because "it is undisputed that the bank robber carried a firearm . . . into the bank," and "[d]efendant never represented to the FBI that he obtained the gun from a gang member or previously used it for gang business." (Def.'s Consol. Mots. Limine at 4.) But, of course, unless the defendant is willing to stipulate to this element of the offense, it is not undisputed. The government must still adduce sufficient evidence to convince the jury. Thus, in addition to its relevance as proof of the defendant's state of mind (the ability to recall and respond appropriately, logically and coherently), this statement also serves to establish an essential element of the offense. The probative value of such evidence is great.

The defendant also argues that there is no nexus connecting the defendant's gang membership to his possession of the firearm. The Court disagrees. The defendant's statement makes the connection very clear. It was his membership and rank in the gang that gave him access to the gun he used (whether a 9-millmeter or a .40-caliber firearm). This statement regarding the defendant's gang membership is, therefore, not only relevant as circumstantial evidence of his state of mind, but also has added probative value in proving one of the essential elements of the offense with which he is charged. The Court finds that the probative value of this circumstantial evidence is not substantially outweighed by its unfair prejudice.

The defendant also objects to evidence of Robert Hall's gang membership. Hall testified at the defendant's suppression hearing and is a central figure in the events surrounding the defendant's confession. When defendant was told that the FBI wanted to speak to him, he initially refused to meet with the FBI agents. After a second request for an interview, the

defendant requested the correctional officer to take the FBI agent's business card to another inmate, Robert Hall, who was also a member of the Four Corner Hustlers gang, for permission to meet with the FBI agents. It was not until Hall gave his okay that Giles agreed to meet with the FBI agents. The government's response is similar to what is discussed above. This is further evidence of the defendant's clear and lucid state of mind and directly contradicts the opinion of defendant's expert witness that his state of mind was impaired. It is customary for inmates to inform each other and even ask permission before speaking to law enforcement officers, in order to avoid any appearance that they are cooperating as informants. That the defendant was thinking clearly enough to conform to this practice in order to avoid placing himself in any danger is evidence of clear thinking. This evidence also directly contradicts the expert's opinion that after being in solitary confinement for such a long period of time, the defendant would be so eager to get out of his cell that he would have spoken to anyone about anything. The fact that the defendant initially refused to speak to the officers directly contradicts the expert's opinion, so that portion of the testimony, at least, is clearly very probative and not unfairly prejudicial.

The defendant objects specifically to evidence that the person from whom he sought permission to speak to the FBI agents was also a member of his gang. Defendant argues that the practice of asking for permission of other inmates before speaking to law enforcement officers is not limited to asking only fellow gang members. Thus, the added information of Hall's gang membership is of little or no probative value. The Court, like most jurors, is not familiar with the details of how such "prison rules" among inmates work. It is, however, significant in and of itself that of all of the inmates the defendant could have turned to for permission, he was clearheaded enough to pick out an inmate who is a member of his own gang. At any rate, the defendant has indicated that he will call fellow inmate and gang member Hall to testify. If so, then Hall's membership in the same gang as the defendant is a permissible area of impeachment to show bias. *See Clark v. O'Leary*, 852 F.2d 999 (7th Cir. 1988). For all of these reasons, defendant's motion is denied as to Hall.

**Motion in Limine #2: Motion to Bar Admission of Defendant's Alleged Statements to Luke Shelby**

Defendant asks the Court to enter a ruling requiring the government to first petition the Court before using this statement. The government agrees. The motion is granted.

**Motion in Limine #3: Motion to Bar Use of Defendant's Prior Convictions During Cross-Examination or, in the Alternative, to Sanitize Them in Order to Prevent Undue Prejudice to Defendant**

Giles was convicted of aggravated battery in 1997 in the Circuit Court of Cook County and sentenced to 3 years' imprisonment. He was released on November 4, 1998. He was subsequently convicted of attempted murder in 1999 in the Circuit Court of Cook County and sentenced to 9 years' imprisonment. He was released on May 6, 2008. Giles was last convicted of armed robbery in 2009 in the Circuit Court of Cook County and sentenced to 21 years' imprisonment. His later two convictions fall within the ten-year limit of Federal Rule of Evidence 609 and thus must be admitted if the court finds that their probative value outweighs their prejudicial effect to the defendant. The factors the court must consider in making this determination are (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue. *Montgomery*, 390 F.3d at 1015.

Factors four and five most favor the admissibility of the later two convictions. The defendant's confession will likely be the strongest evidence the government has. The defendant has given notice that he intends to challenge the credibility of that confession with expert testimony of his impaired state of mind at the time the confession was taken. Since the defendant's expert witness was not present at the time the confession was allegedly given and did not interview or examine him until much later, the defendant's testimony describing his own perception and actions at the actual time of the confession will be extremely important. In the alternative, the defendant may deny that he confessed at all. In that case, his testimony would be in direct conflict with the testimony of the FBI agents. The central issue in the case would then

become the credibility of his testimony compared with the credibility of the FBI agents who took his confession. The jury's determination as to the defendant's credibility will therefore be central to its determination regarding the probative value of his alleged confession under either theory of defense.

Factors one and two are best considered together. Although the two crimes are not inherently strong indicators of dishonesty, together they a show a pattern of conduct. The defendant was barely out of jail for a year after serving his sentence of incarceration for the attempted-murder conviction when he was convicted of armed robbery. These convictions are for serious felony offenses, and their close proximity in time reflects a serious disregard for the rule of law and the rules and norms of society. The court finds that the probative value of these two convictions outweighs their prejudicial effect, so the motion to bar is denied as to these convictions.[2]

The government also seeks to introduce the aggravated-battery conviction, which falls outside the ten-year limit and thus may only be admitted if the court finds based upon specific facts and circumstances that the probative value of the conviction substantially outweighs its prejudicial effect. The objection to the admission of this conviction is sustained. Although this conviction, if considered sequentially, lends some further support to the finding that the defendant harbors a complete disregard for the rule of law, the defendant was released from imprisonment for this conviction almost twenty years ago. This length of time and the admission of the two more recent convictions militate against a finding that the probative value of this conviction would substantially outweigh its prejudicial effect.

If defendant requests it, the court will give a limiting instruction to the jury that the evidence of defendant's prior convictions is submitted and may be considered solely for the

---

2. The Court makes this finding notwithstanding that one of these convictions was for armed robbery, a crime similar to the offense for which the defendant now faces trial, because of the importance of the credibility issue in this case, where it appears that the government's case relies heavily on the defendant's confession and the defendant's case will rely heavily on his testimony, as discussed above.

purpose of weighing the credibility of the defendant's testimony and for no other reason.

**Motion in Limine #4: Motion to Prohibit Government's Use of Robert Hall's Past Criminal Convictions**

Defendant intends to call Robert Hall as a witness at trial to testify about the conditions of the Pontiac prison around the time defendant was interviewed by the FBI. Hall testified for the defendant at the suppression hearing. He is currently incarcerated, serving a 28-year sentence for first-degree murder. The conviction is clearly for a crime punishable by more than one year of imprisonment and, although the conviction was in 2000, it falls within the ten-year time period of Federal Rule of Evidence 609 because Hall remains incarcerated. The conviction should be admitted unless the court finds it is excludable under Federal Rule of Evidence 403. Rule 403 allows exclusion of relevant evidence if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. The government argues that that not only is Hall's criminal history probative of his credibility, but also probative of the conditions in solitary confinement areas such as he and the defendant occupied, which cannot properly be understood by the jury without also presenting the reason for such strict procedures, i.e., the dangerousness of the inmates who are held in solitary confinement. As an example, the government posits that if Hall testifies about the procedures used by prison officials during a cell extraction, the jury should also be informed of the legitimate concerns of prison officials when conducting such extractions of inmates with violent criminal histories. Given this context, the Court can find no basis for concluding that the probative value of Hall's conviction for impeachment purposes is substantially outweighed by any of the Rule 403 considerations.

To the extent that prior convictions are used under these rulings to impeach a witness's credibility, the government will be allowed to ask about or prove only the title of the crime the witness was convicted of, the date of the conviction, and the sentence he received. Evidence of or questions about the specific acts and circumstances of the offense of conviction will not be allowed.

**Motion in Limine #5: Motion to Prohibit Cross-Examination of Robert Hall Regarding Any Prior "Bad Acts"**

In its cross-examination of Hall during the suppression hearing, the government made reference to Hall's possession of weapons, gang affiliation, and dangerousness. Defendant argues that under Federal Rule of Evidence 608(b), extrinsic evidence of prior bad acts, other than that admissible as a conviction under Federal Rule of Evidence 609, is not admissible to attack a witness's character for truthfulness. Cross-examination as to prior "bad acts" is allowed only if the acts are probative of the character for truthfulness or untruthfulness of a witness. Violent acts are not inherently probative of character for truthfulness. As previously noted above, however, the government's intent is not only to impeach Hall's credibility, but to explain and to some extent rebut Hall's testimony regarding the procedures used for cell extractions and in general for dealing with the solitary-confinement populations in which he resided. The questions regarding Hall's prior bad acts at the suppression hearing were propounded in the context of the government's attempt to establish that the procedures Hall had complained about were necessary because of the dangerous nature of the segregation population. Should the defendant present evidence that he and/or others were subjected to cruel or unnecessarily violent procedures in order to corroborate his diminished-state-of-mind argument, whether through Hall's testimony or in some other manner, the government will be allowed some leeway in presenting evidence to negate any implication that the procedures the defendant complains of were random and unnecessary acts of cruelty. Any such inference would carry the probability of engendering unfair prejudice or sympathy. However, the issue of the fairness of prison procedures is largely tangential, and the government will not be allowed to dwell on the violent nature of the prisoners in the defendant's segregation unit.

**Motion in Limine #6: Notice Regarding Defendant's Potential to Give Opening Statement at Start of Defense Case**

The government does not object to this request, and the defendant may, if he chooses, reserve his right to present an opening statement after the government has rested its case in chief.

**Motion in Limine #7: Motion to Exclude Evidence Regarding "25 Other Robberies"**

During his statement to the FBI, defendant allegedly stated: "It was around . . . between February and June 2009. I probably did 25 armed robberies including the bank." Defendant argues that his statement about committing other robberies would constitute evidence of "other bad acts" allowable only pursuant to Rule 404(b). The government responds that it does not believe that the statement constitutes Rule 404(b) evidence and, at any rate, it would offer this statement only to rebut a defense that the defendant got certain facts about the bank robbery wrong in his confession, and to explain why the defendant told investigators it was difficult to remember the specifics of the bank robbery. In other words, if the defendant seizes on the inaccuracies or vagueness of the confession as proof of either a diminished state of mind or a false or coerced confession, the government wishes to be allowed to explain that it is neither and that any inadequacies in the confession were due to the reason the defendant gave−that after committing some 25 robberies in a space of a few months, it became difficult for him to remember the precise sequence and details of each such occurrence. Additionally, the government argues, the defendant's admission of committing 25 other armed robberies further demonstrates that the defendant freely spoke to law enforcement and was open with them about all of his criminal conduct in the hopes of obtaining a cooperation deal, thus contradicting the defendant's contention that his confession was not voluntary. The Court will defer ruling on this issue. It appears that the necessity for even considering the use of this portion of the defendant's confession will depend upon the course of the defense. The Court's ruling may well depend upon whether the defendant attempts to capitalize on the inadequacies of the confession and how it does so. The defendant's strategy will likely determine whether or to what extent the government will need to explain any deficiencies in the defendant's confession. At this time, it is not possible to make that determination, and given that the defense is reserving its opening statement until the close of the government's case in chief, it may well be late into the trial before a determination can be made. The Court therefore directs the government to omit this portion of the defendant's interview during the presentation of its case in chief; with the understanding that there is a possibility that, after first advising the Court of its intention to do so, it may be allowed

to present such evidence in its rebuttal case or even during its cross-examination of the defendant or the defendant's expert witness.

**Date**:  April 10, 2018

_____
**Ronald A. Guzmàn**
**United States District Judge**